J-S82044-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellee | : | |
| v. | : | |
| | : | |
| | : | |
| MAURICE SMITH, | : | |
| | : | |
| Appellant | : | No. 3687 EDA 2017 |

Appeal from the Judgment of Sentence August 2, 2017
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003502-2015

BEFORE: LAZARUS, J., OLSON, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:          **FILED FEBRUARY 07, 2019**

Maurice Smith (Appellant) appeals from the judgment of sentence of 22½ to 45 years of incarceration, imposed following his convictions for third-degree murder and conspiracy to commit robbery. We affirm

On April 25, 2013, the body of Tevan Patrick (Victim) was found inside an abandoned property in Philadelphia. Victim had been shot nine times at close range. After an investigation, the Commonwealth charged Appellant and co-defendant, Bryan Brown-Camp, with murder, conspiracy to commit murder, robbery, conspiracy to commit robbery, possession of a firearm prohibited, firearms not to be carried without a license, carrying a firearm in Philadelphia, and possession of an instrument of crime. A jury trial occurred from February 22, 2017 to March 2, 2017.

_____
* Retired Senior Judge assigned to the Superior Court.

On March 2, 2017, the jury convicted Appellant and Brown-Camp of third-degree murder and conspiracy to commit robbery. The jury found both men not guilty of first-degree murder, conspiracy to commit murder, robbery, and all firearms charges. On August 2, 2017, Appellant and Brown-Camp were both sentenced to an aggregate term of 22½ to 45 years of incarceration.[1] Appellant filed a post-sentence motion,[2] which was denied. Appellant timely filed a notice of appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant begins by challenging the sufficiency of the evidence to sustain both convictions. Appellant's Brief at 10-12. Appellant argues that the evidence is insufficient because "[n]ot one witness identifies Appellant as the shooter" and that "[t]here was no evidence of a planned robbery." *Id*. at 12. We review this issue mindful of the following.

> Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is *de novo* and our scope of review is plenary. When reviewing the sufficiency of the evidence, this Court is tasked with determining whether the

_____

[1] They were sentenced to 20 to 40 years of incarceration for third-degree murder and a consecutive term of 2½ to 5 years of incarceration for conspiracy to commit robbery. Brown-Camp filed post-sentence motions and a notice of appeal to this Court. Brown-Camp's judgment of sentence was affirmed by this Court on January 24, 2019.

[2] Appellant's original post-sentence motion was filed on August 2, 2017. Thereafter, counsel for Appellant withdrew, new counsel entered her appearance, and she filed an amended post-sentence motion, which both incorporated the issues from the August 2, 2017 post-sentence motion and added several new ones.

evidence at trial, and all reasonable inferences derived therefrom, [is] sufficient to establish all elements of the offense beyond a reasonable doubt when viewed in the light most favorable to the Commonwealth[.] The evidence need not preclude every possibility of innocence….

*Commonwealth v. Walls*, 144 A.3d 926, 931 (Pa. Super. 2016) (internal citations and quotation marks omitted). Credibility of witnesses and the weight of the evidence produced is within the province of the trier of fact, who is free to believe all, part, or none of the evidence. *Commonwealth v. Scott,* 146 A.3d 775, 777 (Pa. Super. 2016).

In analyzing this claim, the trial court set forth the following.

The evidence … was sufficient to sustain the convictions for third[-]degree murder and conspiracy to commit robbery. The circumstantial evidence presented in this case weaves together a tale of the actions of [Appellant] and [Brown-Camp] throughout the day on April 22, 2013. The day began with [Victim] sending a text message to [Janeicia Jackson, Brown-Camp's] girlfriend, requesting [Brown-Camp's] new cell phone number. Sometime after Jackson provided the number, [Brown-Camp] called [Appellant] and asked [Appellant] to pick him up. [Appellant] and his girlfriend, [Jackie Brown,] picked up [Brown-Camp] in her four door silver Hyundai. [Appellant] and [Brown-Camp] dropped Brown off at work, at approximately 3:00 p.m., and borrowed her car. [Reginald Tyler, Victim's childhood friend,] saw [Victim] get into a silver four door car at the Citgo Station in Delaware. The phones of [Brown-Camp] and [Victim] were both utilizing a cell phone tower near the Citgo Station at 7:26 p.m. and were in contact with one another at that time. The phones were geographically tracked to Southwest Philadelphia, along with [Appellant's] cell phone. All three phones were utilizing cell towers that covered that site where [Victim's] body was recovered. The property where [Victim's] body was recovered was an abandoned property where [Appellant's] cousin stayed sometimes. [Victim's] cell phone went off-line at approximately 10:00 p.m., somewhere over the [Schuylkill] River, within a half-hour of being geographically located near Southwest Philadelphia with the phones of [Appellant] and [Brown-Camp].

- 3 -

When the phone went offline, it was [] utilizing cell towers in the same area as [Appellant's] phone, on the Schuylkill Expressway. Finally, [Appellant] is seen by Jackson arriving in Brown's four door silver car, a little after 10:00 p.m., at [Appellant's] home, located at 3830 Parish Street (which is a short distance from the Schuylkill Expressway).

[Victim] is last seen at the Citgo Station in Delaware on [April 22, 2013]. The last time he is heard from is close to 9:30 p.m. that evening when he states he is with [Brown-Camp]. His phone is disabled as of approximately 10:00 p.m. …

[Appellant] made statements to [two other individuals, Terry] Kearney and [William] Cummings[,] that he committed the murder during the course of a robbery that he and [Brown-Camp] planned.

Trial Court Opinion, 4/3/2018, at 16-17.

Simply because Appellant was not seen actually shooting Victim does not render the evidence insufficient. Rather, viewing the evidence in the light most favorable to the Commonwealth, the circumstantial evidence established that Appellant and Brown-Camp lured Victim with the intent to rob him, then shot Victim, and left his body in an abandoned house. In fact, at 9:22 p.m. on April 22, 2013, Victim sent a text message to a female friend, stating, "if some fishy shit happen I was wit B-Y."[3] Trial Court Opinion, 4/3/2018, at 10. Around that time, the cell phones of Victim, Appellant, and Brown-Camp were all traced in the area of the abandoned house where Victim's body was found. It is well-settled that "the Commonwealth may sustain its burden of proving every element of the

_____

[3] B-Y was a nickname for Brown-Camp.

- 4 -

crime beyond a reasonable doubt by relying wholly on circumstantial evidence." *Commonwealth v. Davalos*, 779 A.2d 1190, 1193 (Pa. Super. 2001). Accordingly, we conclude that Appellant is not entitled to relief on this claim.

In Appellant's second issue, he claims the trial court abused its discretion by not granting him a new trial on the basis that the verdict was against the weight of the evidence. Appellant's Brief at 12-13. Specifically, Appellant argues that he was not identified as the shooter and claims there "was no evidence of a 'planned' robbery." *Id*. at 12. In addition, Appellant points out that the gun was never found and "the cell phone analysis did not put Appellant's phone in Delaware." *Id*. at 13.

"A verdict is against the weight of the evidence 'where certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" *Commonwealth v. Williams*, 176 A.3d 298, 312 (Pa. Super. 2017) (quoting *Commonwealth v. Lyons*, 833 A.2d 245, 258 (Pa. Super. 2003)). We examine challenges to the weight of the evidence according to the following standard.

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. When a trial court considers a motion for a new trial based upon a weight of the evidence claim, the trial court may award relief only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. The

inquiry is not the same for an appellate court. Rather, when an appellate court reviews a weight claim, the court is reviewing the exercise of discretion by the trial court, not the underlying question of whether the verdict was against the weight of the evidence. The appellate court reviews a weight claim using an abuse of discretion standard.

*Commonwealth v. Jacoby*, 170 A.3d 1065, 1080 (Pa. 2017) (citations and quotation marks omitted).

Here, as discussed *supra*, the trial court analyzed the evidence presented at trial. The trial court concluded that based upon this evidence "the jury could properly infer … that [Appellant] was the perpetrator." Trial Court Opinion, 4/3/2018, at 13. At trial, the jury was presented with a series of witnesses to explain what happened to Victim on April 22, 2013. The jury, which "was the ultimate fact-finder and the sole arbiter of the credibility of each of the witnesses," concluded that despite any inconsistencies,[4] Appellant and Brown-Camp were guilty. *Jacoby*, 170 A.3d at 1080. "A jury is entitled to resolve any inconsistencies in the Commonwealth's evidence in the manner that it sees fit." *Id.* Assessing all of the evidence according to the governing principles cited above, we conclude that the trial court did not abuse its discretion when it concluded

---

[4] The only inconsistency of note was the fact that Appellant's phone was not traced near the Citgo Station in Delaware. However, the fact that Appellant's phone was not traced near there is not conclusive evidence that Appellant was not there.

that the jury's verdict did not shock its sense of justice. Consequently, Appellant's weight challenge fails.

Appellant next claims that the Commonwealth engaged in misconduct in its questioning of Melissa Palmer and references to her testimony during its closing argument. Appellant's Brief at 13-14. Specifically, Appellant claims that the Commonwealth violated the principles set forth in *Bruton v. United States*, 391 U.S. 123 (1968), which held that "a defendant is deprived of his rights under the Confrontation Clause when his nontestifying codefendant's confession naming him as a participant in the crime is introduced at their joint trial, even if the jury is instructed to consider that confession only against the codefendant." *Commonwealth v. Brown*, 925 A.2d 147, 149 (Pa. 2007).

By way of background, Melissa Palmer is Brown-Camp's cousin whom the Commonwealth sought to have testify about an interaction she had with Appellant and Brown-Camp after Victim's murder.[5] Prior to her testifying,

_____

[5] In a statement to police, Palmer stated that she received a message from Brown-Camp on either April 24 or 25, 2013. She arranged to meet Brown-Camp at the Belmont Plateau in Fairmount Park in Philadelphia. Appellant was also at that meeting. At that meeting, Brown-Camp

> asked Palmer questions about her boyfriend who had been convicted of murder. [Brown-Camp] told Palmer that he was being blamed for Victim's death. He admitted that he "set [Victim] up, that him and the other guy picked [Victim] up in Delaware and they brought him to Southwest Philly by saying they were going to rob a drug dealer." [N.T., 2/24/2107, at 69].

*(Footnote Continued Next Page)*

- 7 -

counsel for Appellant and the assistant district attorney entered into an agreement regarding her testimony. *See* N.T., 2/23/2017, at 2-3. They agreed that rather than Palmer testifying that Brown-Camp told Palmer that he and Appellant killed Victim, she would use the word "we" so as not to violate *Bruton*. N.T., 2/23/2017, at 3. During Palmer's testimony, she testified that Brown-Camp and Appellant set up a meeting with her. N.T., 2/24/2017, at 64. She also testified to a redacted statement, where she explained to the jury that she told police that Brown-Camp "told [her] that he set [Victim] up, that [Brown-Camp] and 'the other guy' picked [Victim] up in Delaware and they brought him to … Southwest Philly…" *Id*. at 69. According to Appellant, Palmer's reference to "the other guy" violated *Bruton*. Appellant's Brief at 13.

In addition, Appellant suggests that the assistant district attorney engaged in prosecutorial misconduct by references made to this statement during the closing argument. *See* N.T. 2/28/2017, at 132 (citing a reference in the prosecutor's closing statement to Palmer's statement that "they" went to pick up Victim in Delaware). Appellant argues that "[u]nder the totality of the circumstances," there was "a clear *Bruton* violation." Appellant's Brief at 14.

*(Footnote Continued)* _____

> [Brown-Camp] then told Palmer that he was not the shooter, but he was the one who set up [Victim].

Trial Court Opinion, 4/3/2018, at 5.

- 8 -

Our review of the record reveals that Appellant waived this issue by failing to object to it at trial. First, we observe that counsel for Appellant consented to the version of the statement to which Palmer testified in order to eliminate a potential **Bruton** violation. **See** N.T., 2/23/2017, at 2-3. During trial, if counsel believed that the Commonwealth somehow violated this agreement or that this testimony was otherwise improper, Appellant should have lodged an objection. Additionally, if Appellant believed the Commonwealth's closing argument was improper, he should have objected. "We have long held that [f]ailure to raise a contemporaneous objection to the evidence at trial waives that claim on appeal." **Commonwealth v. Thoeun Tha**, 64 A.3d 704, 713 (Pa. Super. 2013); **Commonwealth v. Arrington**, 86 A.3d 831, 854 (Pa. 2014) (holding Arrington's claim was "waived as [his] counsel did not raise contemporaneous objections to either the prosecutor's summation or … request a mistrial"). Based on the foregoing, because Appellant did not object during this testimony or the closing argument at trial, he has waived this issue on appeal and is therefore not entitled to relief.

Finally, Appellant claims that the trial court abused its discretion in sentencing Appellant where it "relied solely on the seriousness of the crime and its impact on his victims in imposing an unduly harsh sentence." Appellant's Brief at 15. Appellant's claim implicates the discretionary aspects of his sentence.

An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors:

(1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

***Commonwealth v. Samuel***, 102 A.3d 1001, 1006-07 (Pa. Super. 2014) (some citations omitted).

Here, Appellant timely filed a notice of appeal. However, our review of the record reveals that Appellant did not present this issue in a post-sentence motion or at sentencing. The only issue concerning the discretionary aspects of sentencing set forth in his post-sentence motion states the following: "Defendant's aggregate sentence of 22½-45 years should be modified on the ground that the court abused its discretion by considering the killing in question to be an 'execution' when defendant was in fact acquitted of first[-]degree murder." Post-Sentence Motion, 8/2/2017, at ¶ 3. Furthermore, our review of the transcript does not reveal that Appellant preserved this issue at sentencing. ***See*** N.T., 8/2/2017.

Because Appellant's discretionary-aspects-of-sentencing claim on appeal was not presented in his post-sentence motion, we conclude that

- 10 -

Appellant has not preserved this issue for our review, and he is not entitled to relief. ***See Commonwealth v. Rhoades***, 8 A.3d 912, 915 (Pa. Super. 2010) (stating that an appellant waives for appeal issues challenging the discretionary aspects of his sentence where he does not raise them at sentencing or in a post-sentence motion).

For all of the aforementioned reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/7/19

- 11 -