J-A18044-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| FRANZORA ARNEZ SMITH | : | |
| | : | |
| Appellant | : | No. 1437 WDA 2021 |

Appeal from the PCRA Order Entered November 5, 2021
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0003149-2016

BEFORE: STABILE, J., MURRAY, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:        **FILED: NOVEMBER 17, 2022**

Franzora Arnez Smith appeals from the order dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. He claims the Commonwealth violated **Brady v. Maryland**, 373 U.S. 83 (1963), and raises claims of ineffective assistance of counsel. He also argues we should remand for re-sentencing based on a sentencing disparity following the resentencing of his co-defendant. We affirm.

The trial court summarized the procedural history as follows:

> [Smith] was initially charged with one count of Criminal Conspiracy of Possession with Intent to Deliver (PWID), two counts of PWID, one count of Possession of Drug Paraphernalia, two counts of Possession of a Controlled Substance, one count of Persons Not to Possess Firearms, and one count of Receiving Stolen Property.[1] The charges stemmed from the recovery of cocaine, heroin, and firearms

---

[1] 18 Pa.C.S.A. § 903, 35 P.S. § 780-113(a)(30), (a)(32), and (a)(16), 18 Pa.C.S.A. §§ 6105(c)(2), and 3925(a), respectively.

that were found on [Smith's] person as well as in a house in Erie, Pennsylvania following a drug trafficking investigation and surveillance. [Smith] was tried with his Co-Defendant, Stephen Maurice Barry-Gibbons, who was charged with similar offenses. . . .

[Smith] was represented at trial by Attorney Steven Townsend. Attorney Townsend had been privately retained and began representing [Smith] subsequent to [Smith's] Preliminary Hearing. Attorney Townsend filed a Motion to Suppress, alleging that the police lacked reasonable suspicion to stop the car, in which [Smith] was a passenger. The motion was denied by Judge William R. Cunningham.

[Smith] and Co-Defendant Gibbons were tried together before Judge Michael E. Dunlavey. The majority of the Commonwealth's case consisted of evidence from officers involved in the drug trafficking investigation — Detective Michael Chodubski, a Sergeant with the Drug Unit of the City of Erie Police Department; Sergeant Matthew Bennaci, a County Detective with the Erie County District Attorney's Office; and Lieutenant Michael Nolan, the supervisor of the Drug and Vice Unit of the City of Erie Police Department.

Trial Court Opinion, filed Nov. 5, 2021, at 1-2 ("1925(a) Op.").

We need not engage in a full recitation of the facts for this appeal, but will provide factual information relevant to two claims. First, during the direct examination of Lieutenant Nolan, two comments were made that indicated Smith's co-defendant had prior contact with police and a criminal background. Lieutenant Nolan stated that when the Lieutenant walked into the interview room, the co-defendant "looked up at [Lieutenant Nolan]" and "said, 'Good job, Mike, good fucking job[.]'" N.T., Aug 15, 2017, at 112. Lieutenant Nolan also discussed that the co-defendant wanted to work with the police, but that the co-defendant pointed out they should not charge him yet because he was on parole. *Id.* at 114.

Second, we repeat the PCRA court's summary of the factual and procedural history regarding the Commonwealth's disclosure during trial of a police report, which is relevant to Smith's ***Brady*** claim:

> The other item of note involves testimony regarding the recovery of buy money from [Smith] and the apparent failure of the Commonwealth to turn over a copy of a police report referencing the recovery of the money as part of pre-trial discovery. As part of his testimony, Sergeant Chodubski explained that controlled buys and targeted buys were used during [the] course of the investigation. Attorney Townsend sought to discredit the evidence of the buys as they related to [Smith] by showing that Sergeant Chodubski had labeled Tag 14 on $1,534 of U.S. currency as having been seized from L.S. - Leiah Smith. Sergeant Chodubski testified that the evidence had been mislabeled, and it had actually been seized from Defendant Franzora Smith. ***See*** N.T., Aug. 14, 2017 at 136-37. Additionally, Attorney Townsend sought to discredit the testimony by suggesting that there was nothing in any of the investigation reports tying the money used in the controlled buys to [Smith]. Attorney Townsend concluded his cross-examination of Sergeant Chodubski with the following:
>
> > [Attorney Townsend]; And with regard to the -- when you do buys, do you have prerecorded money?
> >
> > [Sergeant Chodubski]: Yes.
> >
> > Q. Okay. And when you do the prerecorded money, you would write a list of the serial numbers of the bills?
> >
> > A. That's correct.
> >
> > Q. If you had that evidence that you believe someone was in possession of that recorded money, you would present that in your case, would you not?
> >
> > A. Yes.
> >
> > Mr. Townsend: All right. Thank you, that's all I have.
>
> N.T., Aug. 14, 2017 at 140-41.

- 3 -

Immediately after the conclusion of Attorney Townsend's cross-examination of Sergeant Chodubski, the Assistant District Attorney handed Attorney Townsend a copy of Detective Bennaci's investigation report, which had apparently been omitted from the pretrial discovery provided to [Smith]. Bennaci's report made reference to buy money that was recovered from [Smith] following the traffic stop. Following an in camera discussion, Judge Dunlavey found the failure to provide a copy Bennaci's report in pretrial discovery was an inadvertent oversight[2] and that there was no surprise or prejudice to [Smith] regarding the reference to Bennaci's report and the buy money on [Smith's] person because that information had been elicited at [Smith's] Preliminary Hearing. *See* N.T., Aug. 15, 2017 at 19-22.

Although Attorney Townsend had not represented [Smith] at the time of the Preliminary Hearing, the information about the buy money was of record and known to [Smith]. *See* N.T., Aug. 15, 2017 at 6-22.

1925(a) Op. at 3-4.

---

[2] The Assistant District Attorney described the disclosure of the report as follows:

Now, those questions [about the buy money] were asked. There was no answer elicited from Officer Chodubski and immediately, when Attorney Townsend was done cross-examining, I provided – I said, well, we had a reference to buy money in Sergeant Bennaci's report. That report was not turned over to the defense. Sergeant Bennaci works for the District Attorney's Office. It was not attached to the incident report. I was unaware that it was not provided in the initial discover that went out.

I immediately turned it over to him. There is a reference to the buy money in that report, Officer Bennaci was the one that assisted with the arrest of . . . Smith along with patrol units from the Erie Police Department.

I did provide both attorneys with that report, neither of them had it, unbeknownst to me[.]

N.T., Aug. 15, 2017, at 6-7.

The jury convicted Smith of all charges. The court sentenced him to an aggregate sentence of 18 to 36 years' incarceration.[3] Smith appealed, and this Court affirmed the judgment of sentence. The Pennsylvania Supreme Court denied his petition for allowance of appeal in January 2020.

In August 2020, Smith filed a timely *pro se* PCRA petition, alleging, among other things, prosecutorial misconduct under **Brady**. The petition also claimed that counsel was ineffective for failing to investigate the case and challenge the reliability of the confidential informants, file a motion for severance, and raise a **Brady** violation claim. The PCRA court appointed counsel. Counsel, "consistent with the directives of [Smith]," did not file an

---

[3] The court imposed the following sentences:

> Count 1: Conspiracy (PWID) — 72 to 144 months incarceration;
>
> Count 2: PWID — 72 to 144 months incarceration, consecutive to Count 1
>
> Count 3: PWID — 72 to 144 months incarceration, consecutive to Count 2;
>
> Count 4: Paraphernalia— merges with Count 3;
>
> Count 5; Possession — merges with Count 1;
>
> Count. 6: Possession – merges with. Count 3;
>
> Count 7: Persons Not to Possess — 60 to 120 months incarceration, concurrent to Count 3;
>
> Count 8: Receiving Stolen Property — 33 to 66 months incarceration, concurrent to Count 3.

1925(a) Op. at 5 (citation omitted).

amended petition. Supplemental Petition, filed May 28, 2012, at 1. The court scheduled a hearing, which after multiple delays, was set for June 30, 2021.

In May 2021, counsel filed a supplement PCRA petition, seeking relief because this Court vacated Smith's co-defendant's receiving stolen property conviction and concluded certain convictions should have merged for sentencing purposes. The supplemental petition pointed out that the evidence supporting the receiving stolen property conviction was the same for both Smith and his co-defendant. Supplemental Petition at 2. The petition further noted that unlike the trial court at his co-defendant's initial sentencing, the trial court properly merged Smith's possession convictions for sentencing purposes. *Id.* The relief sought in the supplemental petition was to "vacat[e] the conviction for receiving stolen property at count 8 and [strike] the sentence imposed at count 8 arising from said conviction." Supplemental Petition at 3.

A hearing occurred on June 30, 2021.[4] On November 5, 2021, the PCRA court granted the PCRA petition in part and denied it in part. It granted the petition on the claim that counsel was ineffective for failing to challenge the sufficiency of the evidence supporting the receiving stolen property conviction and vacated the sentence on that count. It denied the petition as to the

---

[4] The certified record does not have a copy of the transcript of this hearing, and counsel did not request one. The appellant is responsible for ensuring this Court receives a complete certified record. **Commonwealth v. Houck**, 102 A.3d 443, 456 (Pa.Super. 2014) (citation omitted). However, we decline to find waiver here because the lack of the hearing transcript does not hinder our review. *Id.* at 458.

remaining claims. On that same day, it issued an amended sentencing order vacating the conviction for receiving stolen property and the sentence imposed at that count. It ordered that the remaining provisions and conditions of the September 2017 sentencing order remain unchanged. Smith filed a timely notice of appeal.[5]

Smith raises the following issues:

A. Whether the PCRA court erred in failing to find that a **Brady** violation had transpired given the failure of the Commonwealth to provide a copy of the investigative report of Detective Bennaci in pre-trial discovery wherein said report was provided to counsel during trial at the conclusion of the cross-examination wherein that report would have been utilized in informing the content of the cross-examination?

B. Whether [Smith] was afforded ineffective assistance of counsel given the failure to file a motion for severance of trial from the co-defendant Stephen Maurice Barry-Gibbons?

C. Whether defense counsel was ineffective in failing to properly investigate the case in preparation of a defense by specifically seeking the disclosure and unmasking of the identity of the confidential informant(s) utilized by the police?

D. Whether [Smith] should be granted *sua sponte* review and remedy as to the egregious circumstance of a disparate sentencing exposure arising from the resentencing of the co-defendant Barry-Gibbons on remand per a successful direct appeal wherein the co-defendant was resentenced to an aggregate sentence of 75 months to 150 months [Smith's] sentence remains unaltered at 18 years to 36 years where both individuals are similarly-situated and identically convicted and where if anything [Smith]

---

[5] The court did not order a concise statement pursuant to Rule 1925(b), and Smith did not file one.

- 7 -

possesses vastly more significant mitigating factors while Barry-Gibbons bears a significant prior record score and indicia of being the mastermind and primary actor as to the drug trafficking at the core of the instant charges?

Smith's Br. at 2.

Upon a challenge to the denial of PCRA relief, we determine whether the record supports the PCRA court's findings and whether its conclusions are free of legal error. **Commonwealth v. Burton**, 121 A.3d 1063, 1067 (Pa.Super. 2015) (*en banc*).

In his first claim, Smith argues the PCRA court erred in denying his claim that a **Brady** violation occurred when the Commonwealth failed to provide Smith a copy of the police investigative report until after cross-examination of one of the police detectives. He maintains the report was material and the court erred in failing to find prosecutorial misconduct or a **Brady** violation. He argues the "prejudicial impact on a fair trial was evident" and "it surpasses credulity to assign knowledge and notice of the report contents to [defense counsel] wherein he was not even involved in the case at the time of the preliminary hearing." Smith's Br. at 9.

To obtain relief under the PCRA, a petitioner must prove that the "allegation of error has not been previously litigated or waived." 42 Pa.C.S.A. § 9543(a)(3). A claim is previously litigated "if the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue." **Commonwealth v. Brown**, 872 A.2d 1139, 1144 (Pa. 2005) (citing 42 Pa.C.S.A. § 9544(a)(2)). A claim is "waived 'if the petitioner could have raised it but failed to do so before trial, at trial, on appeal

or in a prior state post[-]conviction proceeding.'" *Id.* (quoting 42 Pa.C.S.A. § 9544(b)).

Smith discovered the alleged *Brady* violation during trial. *See* N.T., Aug. 15, 6-22. He did not challenge the trial court's ruling on direct appeal, and he therefore waived the issue. *See Brown*, 872 A.2d at 1144.

Even if he had not waived the claim, we would conclude the PCRA court did not err in finding it lacked merit. To establish a *Brady* violation, the petitioner must prove: "(1) evidence was suppressed by the state, either willfully or inadvertently; (2) the evidence was favorable to the defendant, either because it was exculpatory or because it could have been used for impeachment; and (3) the evidence was material, in that its omission resulted in prejudice to the defendant." *Commonwealth v. Willis*, 46 A.3d 648, 656 (Pa. 2012) (citation omitted).

The PCRA court noted that the trial court found the Commonwealth inadvertently failed to provide the report in pre-trial discovery. Trial Court Opinion, filed Nov. 5, 2021, at 16.[6] It pointed out the information contained in the report – that is, the existence of buy money on Smith's person when he

_____

[6] In his PCRA petition, Smith raised a *Brady* violation claim based on the late disclosure and a claim counsel was ineffective for failing to object to the testimony derived from the report that had not been disclosed during discovery. On appeal, Smith does not raise the ineffectiveness claim. Even if he did, because we agree with the trial court that the underlying *Brady* claim lacked merit, we would conclude the ineffectiveness claim also lacked merit. *See Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014) (stating the three prongs the petitioner must prove to establish a counsel ineffectiveness claim, including that the petitioner must show the underlying claim had merit).

was arrested – was not favorable to Smith and had been known to him, as the existence of buy money on Smith had been mentioned at the preliminary hearing. *Id.* The PCRA court therefore concluded he was not prejudiced by the late provision of the report. This was not error.

In his next two claims, Smith claims his trial counsel was ineffective. To prevail on an ineffective assistance of counsel claim, the petitioner must establish: "(1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result." *Spotz*, 84 A.3d at 311 . "[C]ounsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on appellant." *Commonwealth v. Ousley*, 21 A.3d 1238, 1244 (Pa.Super. 2011) (quoting *Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa.Super. 2010)). "The failure to prove any one of the three [ineffectiveness] prongs results in the failure of petitioner's claim." *Id.* (quoting *Rivera*, 10 A.3d at 1279). "To establish the third, prejudice prong, the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's ineffectiveness." *Commonwealth v. Chmiel*, 30 A.3d 1111, 1127-28 (Pa. 2011).

Smith claims counsel was ineffective for failing to file a motion to sever his trial from that of his co-defendant. He argues his co-defendant had a significant criminal history that was revealed during trial. Smith claims he was a "'bit' player if involved at all or just implicated by circumstance yet he had to bear the consequence of being tried with a major drug trafficker with a

marked criminal record." Smith's Br. at 10. He argues the situation was "rife with the prospect of prejudice and jury bias through unwarranted linkage between the two defendants." *Id.* He claims the joint trial became more prejudicial because of the reference to the co-defendant's criminal record, as there was testimony disclosing that the co-defendant was on parole. He concludes that trial counsel had a valid and arguable meritorious basis to seek severance and was ineffective for failing to do so.

"Severance questions fall within the discretion of the trial [court]." ***Commonwealth v. Brown***, 925 A.2d 147, 161 (Pa. 2007). "When conspiracy is charged, a joint trial generally is advisable." *Id.* "In ruling upon a severance request, the trial court should consider the likelihood of antagonistic defenses. A claim of mere hostility between defendants, or that one defendant may try to exonerate himself at the expense of the other . . . is an insufficient basis upon which to grant a motion to sever." *Id.* (citations omitted). Rather, "severance should be granted only where the defenses are so antagonistic that they are irreconcilable—*i.e.*, the jury essentially would be forced to disbelieve the testimony on behalf of one defendant in order to believe the defense of his co-defendant." *Id.* at 161-162 (citation omitted). Accordingly, "a defendant claiming error on appeal has the burden of demonstrating that he suffered actual, not speculative, prejudice because of the ruling permitting a joint trial." *Id.* at 162 (citations omitted).

The PCRA court concluded Smith failed to establish his counsel was ineffective because he did not prove he was prejudiced, as he did not show the trial court would have granted a motion to sever:

> [T]he Court finds that there would have been little possibility the trial court would have granted such a motion had it been raised. There is a strong preference to trying co-defendants together where, as here, there are charges of conspiracy.
>
> . . .
>
> [Smith] argues that the evidence presented at trial was either incredible or tended to prove that his Co-Defendant Barry-Gibbons was involved in drug trafficking but that there was no evidence to tie [Smith] to the crimes. There is nothing there to show that the Co-Defendants' trial defenses were so antagonistic that they could not be tried together. Moreover, if the jury believed that the evidence of drug trafficking was only attributable to Co-Defendant Barry-Gibbons, that would have only benefitted [Smith], not prejudiced him.
>
> Additionally, [Smith] argues that evidence showing Co-Defendant was on parole at the time these crimes were committed was introduced at trial and that the "spillover" effect of knowledge of his Co-Defendant's criminal background was prejudicial to [Smith's] case. The only reference to Co-Defendant's parole status came from two unsolicited references to Co-Defendant Barry-Gibbon's past criminal history by Lieutenant Nolan. In the first instance, Lieutenant Nolan testified that when he walked into the interview at the Erie Police Department, Barry-Gibbons "looked up at [Lieutenant Nolan] and he said--he said, `Good job, Mike, good fucking job,' and he kind of put his head down and shook his head." N.T., Aug. 15, 2017 at 1[1]2. This passing reference, which indicated Co-Defendant Barry-Gibbons knew Lieutenant Nolan and might have suggested had a criminal background, was so minor that it did not raise an objection from either defense counsel and was so minor and fleeting that there was no prejudice to either Defendant from the reference.

The second reference occurred when Lieutenant Nolan responded to a question from the Commonwealth about Co-Defendant Barry-Gibbon's offer to work with the Erie Police Department. At trial, the following exchange took place:

[Assistant District Attorney Garcia] Q. Did. Mr. Barry-Gibbons make any proposals to you about wanting to work for the Erie Police Department?

[Lieutenant Nolan] A. Yes, he did.

Q. What did he say in that respect?

A. Well, he told us that he'd be willing to help us get some bigger fish, and that. But he said he couldn't go to the county prison. So what that means is he can't charge me now, because if I go to the county prison, I'm on parole, and I'll be locked up in there or -- by my -- everyone is going to know that I was – that's what it was. Everyone is going to know that I was locked up.

N.T., Aug. 1[5], 2017 at 1[1]4.

Co-Defendant Barry-Gibbons' counsel immediately requested a sidebar and requested a mistrial. At sidebar and in an in camera discussion with the trial judge, [Smith's] trial counsel stated that the testimony did not prejudice his client. *See id.* at 116. Indeed, when the judge offered to make a curative instruction advising the jury to ignore all of the testimony regarding the conversation between Lieutenant Nolan and Co-Defendant Barry-Gibbons, [Smith's] trial counsel specifically requested that the entirety of the conversation not be stricken from the record because some of the conversation helped his client. *See id.* [at 121]. Thereafter, the trial judge gave a curative instruction to the jury to disregard those portions of Lieutenant Nolan's testimony. *See id.* at 127-28. It is well established that juries are presumed to follow the trial court's instructions and that a trial court's curative instruction is presumed to be sufficient to cure any prejudice. *See Commonwealth v. Thornton*, 791 A.2d 1190 (Pa. Super. 2002).

The jury heard very little — and heard no details — about Co-Defendant Barry-Gibbon's criminal record. The trial court

gave an immediate curative instruction which the jurors acknowledged. Accordingly, there was no prejudice to [Smith]. Additionally, trial counsel could not have known or anticipated that Co-Defendant Barry-Gibbons' criminal history would be inadvertently disclosed at the time of trial. Trial counsel cannot be faulted for choosing not to file a motion to sever the two cases before trial because he did not foresee the unexpected disclosure.

Here, [Smith] failed to present testimony at the Evidentiary Hearing tending to show that he suffered real prejudice because he was tried together with his Co-Defendant, and the Court cannot discern any. Accordingly, trial counsel was not ineffective for making the strategic decision not to raise the issue, particularly where the issue had no merit.

1925(a) Op. at 11-15 (some alterations in original).

The record supports the court's conclusions, and it did not err in finding Smith failed to prove prejudice. Smith did not establish that if counsel had filed a motion to sever, it would have been meritorious. The defenses were not "so antagonistic that they were irreconcilable," such that severance was required.

Next, Smith argues the PCRA court erred in denying his claim that his counsel was ineffective for failing to file a motion to compel the disclosure of the identities of the confidential informants. He maintains counsel should have "contested the reliability of the confidential informants and that the failure to pursue this avenue of investigation and challenge served to undermine his contentions underlying the suppression motion and further impeaching the reliability and efficacy of the Commonwealth's case at trial." Smith's Br. at 12. He argues his "fundamental contention is that he did not know or have contact with any of the confidential informants and if they had been disclosed to the

- 14 -

defense he would have been positioned to display any lack of nexus with them," which would call into question the Commonwealth's case. *Id.*

"The Commonwealth enjoys a qualified privilege to withhold the identity of a confidential source." ***Commonwealth v. Marsh***, 997 A.2d 318, 321 (Pa. 2010) (citation omitted). "[T]o overcome this qualified privilege and obtain disclosure of a confidential informant's identity, a defendant must first establish, pursuant to Rule 573(B)(2)(a)(i), that the information sought is material to the preparation of the defense and that the request is reasonable." ***Id.*** (citation omitted). "Only after the defendant shows that the identity of the confidential informant is material to the defense is the trial court required to exercise its discretion to determine whether the information should be revealed by balancing relevant factors, which are initially weighted toward the Commonwealth." ***Id.*** at 321-322 (citation omitted).

The PCRA court concluded any motion seeking the identities of the confidential informants would have been meritless and therefore counsel was not ineffective:

> Attorney Steven Townsend testified at the Evidentiary Hearing that he and [Smith] spoke often by phone and they discussed how the Confidential Informants may or may not factor into [Smith's] case. Attorney Townsend further testified that, in his professional opinion, the identities of the Confidential Informants did not come into play. The controlled buys were made under surveillance and the investigating officers were available to testify that [Smith] had appeared and met a Confidential Information at a predetermined location. Therefore, the identity of the Confidential Informants was immaterial and a request to discover their identities was unlikely to be granted. ***See,***

> ***e.g., Commonwealth v. Bing***, 713 A.2d 56 (Pa. 1998). As the issue of the identity of the Confidential Informants was meritless, trial counsel could not be ineffective for refusing to raise it.

1925(a) Op. at 11.[7]

_____

[7] Smith also contends the court erred in relying on the trial and appellate court findings that the confidential informants were reliable when they were ruling on the motion to suppress, reasoning such reliance "is dismissive of his present argument that but for the omission of counsel, there would have been more credible and compelling means and evidence to impugn the reliability of the confidential informants." Smith's Br. at 12. In denying Smith's separate PCRA claim that counsel was ineffective for failing to contest the reliability of the informants, the PCRA court concluded the claim was previously litigated and, to the extent he attempted to reframe it on PCRA, it lacked merit, reasoning:

> On direct appeal, . . . [t]he Superior Court adopted the findings of the Suppression Court and cited the Suppression Court's ultimate determination:
>
>> All of the confidential informants were corroborated by the surveillance conducted by the police, who observed [Juan] [a/k/a Stephen Barry Gibbons] and [Appellant] [a/k/a/ Franzora Smith] inaction, starting from 1055 West 30 Street to the designated meeting sites. Both [Juan] and [Appellant] had a house key to enter 1055 West 30th Street since July, 2015.
>
> ***See*** Franzora Smith Superior Court Opinion, Aug. 26, 2019 at 15; Stephen Barry- Gibbons Trial Court Opinion, Feb. 21, 2018 at 10. Additionally, the Court notes that the Suppression Court specifically found that the information provided by the Confidential Informants was reliable. ***See*** Stephen Barry-Gibbons Trial Court Opinion, Feb. 21, 2018 at 9. As the Superior Court adopted the Suppression Court's findings that the Confidential Informants were reliable, there is not merit to the underlying claim and counsel could not have been ineffective for not raising it.

1925(a) Op. at 9. The PCRA court did not mention this Court's findings regarding reliability when denying the counsel ineffectiveness claim for failure
*(Footnote Continued Next Page)*

The record supports the court's findings, and it did not err in rejecting the ineffectiveness claim. Smith could not establish the identities were material, and therefore the underlying claim lacked arguable merit.

In his final claim, Smith argues the court erred in failing to grant relief based on the sentencing disparity following the re-sentencing of Smith's co-defendant. He argues that a vast disparity now exists between Smith's sentence of 18 to 36 years' imprisonment and his co-defendant's sentence, which he alleges was 75 to 150 months' imprisonment, and claims the disparity exists even though his co-defendant had more criminal culpability. He claims the disparity "is so significant as to constitute a legal travesty and compels a *sua sponte* correction." Smith's Br. at 15-16. He reasons that "a three-fold amplification of sentence for co-defendant convicted of the same criminal offenses arising out of analogous criminal conduct where if anything the mitigative factors would [] play toward the defendant facing the much lengthier sentence from any reasonable evaluation should be an affront to this Court as a lapse of fundamental fairness and justice." ***Id.*** at 16. Smith argues "[t]he fact that a different judge imposed the resentencing causing the disparity should be of no legal moment as the judges are constituent members and constitute the same lower Court and the resulting sentences should be

---

to file a motion to disclose the informants. To the extent Smith is attempting to also argue the court erred in denying the claim that counsel was ineffective for failing to contest the informant's reliability, we conclude he was waived such claim and, even if he had not waived it, we would conclude the court did not err in denying it.

reviewable as if imposed by the same Court exercising the same jurisdiction and discretion and confronted with the same legal standards and obligations." *Id.* at 17. He argues the court when sentencing Barry-Gibbons did not afford any reason as to the disparity in sentences.[8]

Smith waived this claim for failing to raise it in the PCRA court. Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). In the PCRA court, Smith requested that the court vacate the receiving stolen property conviction and vacate the sentence on that conviction. The PCRA court granted this relief. Smith did not seek relief based on an alleged disparity in the sentencing following Barry-Gibbons' re-sentencing. Smith asks us to review this claim *sua sponte* but provides no case law to support our ability to do so.

Order affirmed.

_____

[8] On direct appeal Smith's co-defendant, Barry-Gibbons, challenged, among other things, the sufficiency of the evidence supporting the receiving stolen property conviction and the court's failure to merge the possession counts for sentencing purposes. ***Commonwealth v. Barry-Gibbons***, 2019 WL 2503185 (Pa.Super. June 17, 2019). This Court agreed, vacated the sentences for the receiving stolen property conviction and the possession of controlled substances convictions. ***Id.***, at *11, 16. We found that resentencing was not required because the disposition did not impact the sentencing scheme. ***Id.*** at *16. Barry Gibbons then filed a PCRA petition claiming, among other things, that the sentence was based on an incorrect calculation of his offense gravity score. ***Commonwealth v. Barry-Gibbons***, 2022 WL 1931429, at *3 (Pa.Super. filed June 6, 2022). The PCRA granted relief on his sentencing claim and re-sentenced Barry-Gibbons to ten to 20 years' incarceration. ***Id.***, at *3-4.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/17/2022</u>