J-S09039-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ERICK FRANCISCO GALO-PONCE | : | |
| | : | |
| Appellant | : | No. 2343 EDA 2024 |

Appeal from the Judgment of Sentence Entered October 17, 2023
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0001473-2023

BEFORE: LAZARUS, P.J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED APRIL 23, 2025**

Appellant, Erick Francisco Galo-Ponce, appeals from the judgment of sentence entered in the Court of Common Pleas of Montgomery County on October 17, 2023. After a careful review, we affirm.

The relevant facts and procedural history are as follows: On December 17, 2022, a 9-1-1 call reported that there was a dead body under the bridge located behind 151 West Marshall Street, Norristown, Montgomery County. Norristown Police Officer Robert Nolan responded to the scene. N.T., 10/2/23, at 41-42, 48. The victim was identified as Nilson Cardona. *Id.* at 88. Dr. Ian Hood, M.D., performed the autopsy of the victim and determined that he died from blunt force trauma to the head. *Id.* at 107. The victim's injuries were

---

[*] Former Justice specially assigned to the Superior Court.

consistent with having been hit in the head with a heavy object between four and six times. N.T., 10/2/23, at 97. The first blow to the head knocked the victim down, and the remaining blows occurred as he was falling or when he was on the ground. N.T., 10/2/23, at 91. The medical examiner found no evidence that the victim attempted to resist or defend himself. *Id*. The cause of death was homicide. *Id.* at 93. The resulting investigation revealed that Appellant and his then-girlfriend conspired to rob the victim of his wallet and car. During the robbery, Appellant killed the victim by bashing his head and shattering his skull with a metal pipe. *Id.* at 90-91.

Pursuant to a plea agreement, Appellant's co-conspirator, Ana Gonzalez-Munguia, testified to the events at trial. She stated that at the time, she and Appellant were homeless and living under the bridge where the murder occurred. N.T., 10/3/23, at 112. In early December 2022, she began Facebook messaging the victim who did not know she had a boyfriend. N.T., 10/3/23, at 114-15, 122. He lived in New York and had never met Appellant or Gonzalez-Munguia but was "friends" with her online. *Id.* at 116. She told him she was homeless and persuaded him to send her money. He sent her three electronic payments totaling $330 which, without the victim's knowledge, went directly into Appellant's bank account. N.T., 10/3/23, at 120-25. Appellant and Gonzalez-Munguia agreed that she would befriend the victim and lure him to Norristown so they could take his car and start a new life in Texas. *Id.* at 125.

The plan was for her to bring the victim under the bridge where Appellant would stab or hit him. N.T., 10/3/23, at 127-28.

Gonzalez-Munguia told the victim she needed help finding housing to rent. *Id.* at 128. On December 16, 2022, the victim came to Norristown to meet her, and she persuaded him to help her collect her belongings from under the bridge where Appellant was waiting for a signal. N.T., 10/3/23, at 132. She was simultaneously texting Appellant, updating him that she and the victim were on their way. *Id.* at 133, 137-38. When they arrived, Gonzalez-Munguia signaled to Appellant who attacked the victim and bashed him over the head with a metal pipe. N.T., 10/3/23, at 139-41. The two took the victim's phone, wallet, and car. *Id.* at 142-44. After Appellant ensured the victim was dead, they fled to Texas. *Id.* at 148.

Appellant continued to use the victim's credit card for gas, food, and motels throughout the southern United States—purchases which were tracked by law enforcement.  Appellant and Gonzalez-Munguia were arrested in Texas and extradited to Pennsylvania. N.T., 10/3/23, at 56. Gonzalez-Munguia admitted to her role in the killing but first told the police that they acted in self-defense. N.T., 10/3/23, at 149-50. She later admitted that this was a lie that she and Appellant agreed to tell if they were caught. *Id.* at 150. She testified that it was a planned robbery, and the victim never threatened her, harmed her, or physically touched her. *Id.* at 151. The victim had not attacked her or Appellant under the bridge. *Id*.

At the conclusion of the trial, Appellant was convicted of second-degree murder, criminal conspiracy, robbery - serious bodily injury, and theft.[1] On October 17, 2023, Appellant was sentenced to a mandatory life term of imprisonment for second-degree murder and all sentences were concurrent. After Appellant's appellate rights were reinstated,[2] he filed a post-sentence motion on June 3, 2024. The trial court denied the motion on August 6, 2024. Appellant filed a notice of appeal on August 30, 2024. Appellant filed a concise statement pursuant to Pa.R.A.P. 1925(b) on September 17, 2024, and the trial court filed a Rule 1925(a) opinion on October 10, 2024. This appeal follows.

Appellant raises three issues for our review:

1. Was Appellant's verdict against the weight of the evidence where the evidence consistently showed that the Appellant acted in self-defense and defense-of-others?

2. Was Appellant's mandatory sentence of life imprisonment with no possibility of parole unconstitutional under Article I, Section 13 of the Constitution of Pennsylvania where he was convicted of Second Degree Murder?

3. Was Appellant's mandatory sentence of life imprisonment with no possibility of parole unconstitutional under the Eighth Amendment to the U.S. Constitution where he was convicted of Second Degree Murder?

Appellant's Br. at vi.

_____

[1] 18 Pa.S.C.A. § 2502(b); 18 Pa.S.C.A. § 903; 18 Pa.S.C.A. § 3701(a)(1)(i); 18 Pa.C.S.A. § 3921(a).
[2] On May 23, 2024, Appellant was granted relief pursuant to the Post-Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546, and was permitted to file this direct appeal *nunc pro tunc*.

Appellant's first issue is a challenge to the weight of the evidence. To begin, we recognize that,

> our standard of review for a weight-of-the-evidence claim is an abuse of discretion. As we have often reminded appellants, "An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." ***Commonwealth v. Windslowe***, 158 A.3d 698, 712 (Pa. Super. 2017). . . .

> "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." ***Commonwealth v. Santos***, 176 A.3d 877, 882 (Pa. Super. 2017). To mount an abuse-of-discretion attack against the trial court's determination that its guilty verdicts were not so against the weight of the evidence as to shock that court's own conscience, [an appellant must] . . . demonstrate how the trial court's ruling overrode the law, was manifestly unreasonable, or the product of bias, prejudice, ill-will or partiality.

***Commonwealth v. Rogers***, 259 A.3d 539, 541 (Pa. Super. 2021), appeal denied, 280 A.3d 866 (Pa. 2022) (emphasis omitted). A weight-of-the-evidence claim "concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." ***Commonwealth v. Charlton***, 902 A.2d 554, 561 (Pa. Super. 2006).

Appellant contends that the issue of self-defense and defense of others was properly raised at trial, and that the burden shifted to the Commonwealth to prove that Appellant's act was not in self-defense. Appellant's Br. at 4. Appellant argues that the defense was able to rebut the Commonwealth's

contention that the self-defense claim was fabricated because Appellant believed intervention was necessary to protect his co-conspirator girlfriend. Appellant's Br. at 6, 8. Appellant thus claims that the weight of the evidence supports the applicability of the self-defense justification, as well as a finding that Appellant acted in self-defense or defense of others. *Id.* at 7-8.

> The Supreme Court explained the evidentiary burdens as follows:
>
> While there is no burden on a defendant to prove the [self-defense] claim, before that defense is properly at issue at trial, there must be **some evidence, from whatever source** to justify a finding of self-defense. If there is any evidence that will support the claim, then the issue is properly before the fact finder.

**Commonwealth v. Torres**, 766 A.2d 342, 345 (Pa. 2001) (emphasis added).

Appellant asserts that the self-defense claim was raised during defense counsel's opening statement. Appellant's Br. at 4. Defense counsel told the jury during his opening statement that the evidence at trial would show that Appellant was trying to protect his girlfriend from an individual who he thought was trying to kill her. *Id.* at 4-5 (citing N.T., 10/2/23, at 35-36).

It is well-settled that opening statements made by counsel are not evidence. **Commonwealth v. Brown**, 925 A.2d 147, 158 (Pa. 2007); **see also Steltz v. Meyers**, 265 A.3d 335, 340, 348 (Pa. 2021) (acknowledging the propriety of the trial court's curative instruction that "statements and arguments made by counsel do not constitute evidence. They are not the facts. Evidence includes any testimony of witnesses, documents, and other

exhibits submitted during the trial constitute facts[.]"). Defense counsel admitted as much in his closing statement:

> The DA's going to stand up at some point during their closing and say the defense, at the beginning of this case, told us this was a self-defense case. What was said in the opening statements was not evidence.

N.T., 10/5/23, at 7. Thus, defense counsel's mention of self-defense during opening statements was not a source of evidence that could be used to justify a finding of self-defense.

The only source of evidence that concerned self-defense during trial was the testimony of co-conspirator Gonzalez-Munguia for the Commonwealth. However, her testimony explicitly denied that there was ever a threat of force against them by the victim. N.T., 10/3/23, at 151. She admitted that she and Appellant planned to tell police they acted in self-defense if they were caught and arrested. ***Id.*** at 150, 157. This testimony is not evidence that could justify a finding a self-defense. ***See Torres, supra***. Because there was no evidence presented at trial that could justify a finding of self-defense, the issue was not properly before the fact-finder.

Appellant attempts to identify a source of evidence justifying a self-defense claim by arguing that his trial counsel's cross-examination of Gonzalez-Munguia rebutted the Commonwealth's contention that she and Appellant fabricated the self-defense claim. Appellant's Br. at 6. Appellant's trial counsel elicited a concession from Gonzalez-Munguia that the first time she told the police that the self-defense claim was a fabrication was after she

agreed to cooperate and was told she would receive a reduced plea. N.T., 10/3/23, at 166. Appellant suggests that she was incentivized to testify by her reduced plea, and thus she should not be believed. *Id.* However, the jury heard that she was receiving a reduced plea based on her cooperation and still credited her testimony that she and Appellant planned to lie about having acted in self-defense. This Court cannot reevaluate the credibility of the witnesses. *See, e.g., Commonwealth v. Palo*, 24 A.3d 1050, 1055 (Pa. Super. 2011) ("An appellate court cannot substitute its judgment for that of the jury on issues of credibility."). It is the jury's function to weigh the evidence, and it is free to accept all, part, or none of the evidence. *Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa. Super. 2013), appeal denied, *Commonwealth v. Hopkins*, 78 A.3d 1090, (Pa. 2013).

We conclude that the trial court properly determined that the verdict was not against the weight of the evidence. On this issue, the trial court stated the following:

> Defense counsel pivoted from a self-defense theory, presumably because the evidence did not support it, to the Commonwealth's main witness lacked credibility and that the jury should completely discredit her testimony. This change in strategy shows that counsel abandoned the self-defense claim. Appellate counsel cannot now argue on appeal that the jury should have credited testimony of self-defense that even trial counsel knew could not be substantiated. Accordingly, alleged evidence of self-defense cannot be credibly raised as a means to attack the weight of the evidence, and for this reason this claim fails.

Tr. Ct. Op. at 7.

We agree; the weight of the evidence cannot support a claim of self-defense when no evidence justifying self-defense was presented at trial at all. We discern no abuse of discretion, and Appellant has failed to allege or show that the trial court's ruling overrode the law, was manifestly unreasonable, or the product of bias, prejudice, ill-will or partiality.

Appellant's second and third issues challenge the legality of his sentence. A mandatory sentence of life imprisonment is imposed upon a defendant who is convicted of murder of the second degree and the defendant is ineligible for parole. 18 Pa.C.S.A. § 1102(b). Appellant argues that his sentence of life imprisonment with no possibility of parole for his second-degree murder conviction is an unconstitutional punishment under the United States and Pennsylvania Constitutions.[3] Appellant's Br. at 8.

> As a threshold matter, a statute is presumed to be constitutional and will only be invalidated as unconstitutional if it clearly, palpably, and plainly violates constitutional rights. Analysis of the constitutionality of a statute is a question of law; therefore, our standard of review is *de novo*, and our scope of review is plenary.

***Commonwealth v. Brensinger***, 218 A.3d 440, 456 (Pa. Super. 2019) (*en banc*) (citations and internal quotation marks omitted).

A claim of cruel and unusual punishment challenges the legality of a sentence. ***Commonwealth v. Middleton***, 467 A.2d 841, 846 n.5 (Pa. Super.

---

[3] U.S. CONST. AMEND. VIII (prohibiting cruel and unusual punishment); PA. CONST. ART. 1, SEC. 13 (providing a guarantee against cruel and unusual punishment).

1983). We review the legality of a sentence under a *de novo* standard. Our scope of review is plenary. "Duly enacted legislation is presumed valid, and unless it clearly, palpably and plainly violates the Constitution, it will not be declared unconstitutional. Accordingly, the party challenging the constitutionality of a statute bears a heavy burden of persuasion." *Commonwealth v. Baker*, 78 A.3d 1044, 1050 (Pa. 2013) (citation omitted). Moreover, "the legislature has the exclusive power to pronounce which acts are crimes, to define crimes, and to fix the punishment for all crimes," including mandatory punishments where, in the legislature's judgment, "such a sentence is necessary." *Commonwealth v. Eisenberg*, 98 A.3d 1268, 1283 (Pa. 2014).

In Appellant's brief, he extensively analyzed the factors set forth in *Commonwealth v. Edmunds*, 586 A.2d 887, 895 (Pa. 1991), asserting that the Pennsylvania Constitution offers broader protections than its federal counterpart. *See* Appellant's Br. at 10-16. Appellant asserts that life without parole sentences are excessive and fail to further the goals of deterrence and rehabilitation. Appellant's Br. at 16-18. Finally, Appellant argues that his sentence is cruel and unusual under the United States Constitution. *Id.* at 18-21.

A panel of this Court was faced with a constitutional challenge to the imposition of the mandatory sentence of life in prison without parole upon a

conviction of second-degree murder conviction in ***Commonwealth v. Middleton***, 467 A.2d 841 (Pa. super. 1983). This Court observed,

> The offense of felony-murder is undoubtedly one of the gravest most serious which can be committed. The taking of a life during the commission of an enumerated felony demonstrates a disregard for the property, safety, sanctity, integrity, and especially, the life of the victim. It is a crime of arch violence. Clearly, such an offense merits a severe penalty.

***Id.*** at 847. There we compared the appellant's sentence with sentences imposed in Pennsylvania for other felonies and it was clear that the legislature contemplated that the seriousness of felony murder should necessitate an equally severe penalty. Pennsylvania's sentence for felony murder convictions comported with a range of sentences found proper in other jurisdictions. ***Id.*** Thus, we concluded that the sentence of life imprisonment for second-degree murder was not unconstitutionally disproportionate.

We addressed this particular issue more recently in the cases of ***Commonwealth v. Henkel***, 938 A.2d 433 (Pa. Super. 2007) and ***Commonwealth v. Rivera***, 238 A.3d 482 (Pa. Super. 2020). In both cases we rejected the challenges and reiterated our ***Middleton*** standard. Accordingly, Appellant's sentence of life imprisonment without parole is constitutional for the offense of second-degree murder as it does not "clearly, palpably, and plainly violates constitutional rights." ***Baker, supra***.

Finally, we do not analyze the ***Edmunds*** factors because Pennsylvania courts have consistently determined that the Pennsylvania Constitution is coextensive with the federal Constitution on the point of cruel and unusual

punishment. ***See, e.g., Commonwealth v. Zettlemoyer***, 454 A.2d 937, 967 (Pa. 1982); ***Commonwealth v. Yasipour***, 957 A.2d 734, 743 (Pa. Super. 2008). Additionally, we note that our Supreme Court has granted allowance of appeal as to two related issues in ***Commonwealth v. Lee***, 313 A.3d 452, 180 WAL 2023 (Pa. 2024).[4] Therefore, we decline to revisit this precedent and to extend the protections afforded by Pennsylvania's prohibition against cruel punishments beyond those afforded by the Eighth and Fourteenth Amendments.

Judgment of Sentence Affirmed.

---

[4] The two issues our Supreme Court will be deciding are as follows:

> (1) Is Petitioner's mandatory sentence of life imprisonment with no possibility of parole unconstitutional under Article I, § 13 of the Constitution of Pennsylvania where he was convicted of second-degree murder in which he did not kill or intend to kill and therefore had categorically-diminished culpability, and where Article I, § 13 should provide better protections in those circumstances than the Eighth Amendment to the U.S. Constitution?

> (2) Is Petitioner's mandatory sentence of life imprisonment with no possibility of parole unconstitutional under the Eighth Amendment to the U.S. Constitution where he was convicted of second-degree murder in which he did not kill or intend to kill and therefore had categorically-diminished culpability under the Eighth Amendment?

***Lee***, 313 A.3d 452, at *1 (brackets omitted).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>4/23/2025</u>